UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEDICAL TECHNOLOGY ASSOCIATES II INC.<br><br>vs.<br><br>CARL W. RAUSCH and WORLD TECHNOLOGY EAST II LIMITED | CIVIL ACTION<br><br>NO: 2:21-cv-01095-MMB |

**POST-HEARING REPLY BRIEF OF DEFENDANTS CARL W. RAUSCH AND WORLD TECHNOLOGY EAST II LIMITED RELATING TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

AARON L. PESKIN (PA ID: 206995)
RALPH P. FERRARA (pro hac)
KEVIN J. KOTCH (PA ID: 70116)
Ferrara Law Group, P.C.
1 Holtec Dr., Suite G-102
Marlton, NJ 08053
Telephone: (609) 571-3738
Fax: (609) 498-7440
aaron@ferraralawgp.com

Attorneys for Defendants Carl W. Rausch and World Technology East II Limited

# **TABLE OF CONTENTS**

I.  Defendants Have Met Their Initial Burden Of Establishing That An Agreement To Arbitrate Exists ...................................................................................................................1

II. Plaintiff Has Not Met Its Burden Of Establishing By The Clear And Convincing Evidence That The Agreement Was The Product Of Fraud ..................................................3

    A.  Plaintiff Must Prove Fraud By Clear And Convincing Evidence............................3

    B.  Plaintiff Has Not Proven By Clear And Convincing Evidence That The 2017 Med Tech-WTE2 DLA Was The Product Of Fraud ...............................6

III. Whether Or Not The Missing Witness Inference Applies, The Only Competent, Unrebutted Testimony Is That Conroy Cheng (Med Tech's Major Investor, Director And Officer) Was Aware Of The DLA Between Med Tech And WTE2 By 2017.............7

IV. The Testimony And Documents Related To An Alleged MSA Are Not Admissible To Establish A Character Of "Untruthfulness" Or To Prove A Common "Plan" ....................9

V.  The Court Should Not Consider The Incomplete Employment Agreement Which Was Not Introduced During The Testimony Of Any Witness......................................................11

VI. All Of The Claims Are Subject To Arbitration ..................................................................12

# TABLE OF AUTHORITIES

## Cases
Andrade v. Walgreens-Optioncare, Inc., 784 F.Supp.2d 533 (E.D. Pa. 2011)..............10

De Lage Landen Services, Inc. v. Urban Partnership, LLC, 903 A.2d 586
    (Pa. Super. Ct. 2006)..........................................................................................4

Goldstein v. Depository Trust Co., 717 A.2d 1063 (Pa. Super. Ct. 1998) ......................2

Hawkey v. Peirsel, 869 A.2d 983 (Pa. Super. Ct. 2005).................................................8

Hinnant v. Am. Ingenuity, LLC, 554 F. Supp. 2d 576 (E.D. Pa. 2008) ........................14

Hvizdak v. Linn, 190 A.3d 1213 (Pa. Super. Ct. 2018)..................................................4

In re Estate of Presutti, 783 A.2d 803 (Pa. Super. Ct. 2001) .........................................4

In re Groggel, 333 B.R. 261 (Bankr. W.D. Pa. 2005).....................................................8

Lumpkins v. CSL Locksmith, LLC, 911 A.2d 418 (D.C. Ct. App. 2006).......................4

MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefits Funds, 974 F.3d 386
    (3d Cir. 2020)..................................................................................................1, 3

Oliver v. Nordstrom King of Prussia, No. 10-cv-5340, 2010 WL 5121966
    (E.D. Pa. Dec. 14, 2010) .................................................................................13

Parfi Holding AB v. Mirror Image Internet, Inc., 817 A.2d 149 (Del. 2002)...............12

Pearson v. U.S. Bank Nat. Ass'n, No. 13-889, 2014 WL 4163020
    (D. Minn. Aug. 21, 2014) .................................................................................6

Pitchford v. PEPI, Inc., 531 F.2d 92 (3d Cir. 1975) .......................................................8

R&R Edwards Corp. v. Melanson, No. 034426, 2006 WL 3725562
    (Mass. Super. Ct., Middlesex County Nov. 21, 2006).......................................5

Rohm and Haas Co. v. Continental Cas. Co., 781 A.2d 1172 (Pa. 2001) ..................3, 4

Roosevelt Park Protestant Reformed Church v. London, 292 N.W.2d 486 (Mich. 1940) ..............4

Sims v. Blanchris, Inc., 648 F. Supp. 480 (S.D.N.Y. 1986).............................................2

SodexoMAGIC, LLC v. Drexel University, 24 F.4th 183 (3d Cir. 2022).......................4

United States v. Caldwell, 760 F.3d 267 (3d Cir. 2014)..................................................................10

United States v. Guerrier, 521 F. Supp. 3d 527 (M.D. Pa. 2021).............................................9, 10

United States v. Johnson, No. 1:16-cr-162, 2017 WL 5135355 (M.D. Pa. Nov. 6, 2017)............10

United States v. Murray, 103 F.3d 310 (3d Cir. 1997) ..................................................................10

United States v. Williams, 464 F.3d 443 (3d Cir. 2006) ................................................................10

Viso v. Werner, 471 Pa. 42, 46, 369 A.2d 1185 (1977) ...................................................................1

Weissberger v. Myers, 90 A.3d 730 (Pa. Super. Ct. 2014)..............................................................3

Wexler v. AT&T Corp., 211 F. Supp. 2d 500 (E.D.N.Y. 2016).....................................................12

### Statutes and Rules

Fed. R. Evid. 404 ..........................................................................................................................10

Fed. R. Evid. 608 .....................................................................................................................9, 10

Defendants Carl W. Rausch and World Technology East II ("WTE2") provide the following post hearing reply brief in further support of Defendants' Motion to Compel Arbitration.

I. **Defendants Have Met Their Initial Burden Of Establishing That An Agreement To Arbitrate Exists.**

Defendants have the initial burden of establishing by the preponderance of the evidence that an agreement to arbitrate exists. See MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefits Funds, 974 F.3d 386, 402 (3d Cir. 2020) (apply state law principles); Viso v. Werner, 471 Pa. 42, 46, 369 A.2d 1185, 1187 (1977) (preponderance of the evidence). Defendants have met this initial burden. While Plaintiff attacks the credibility of Rausch and Lee, Defendants cannot directly dispute their account.

Both Rausch and Lee testified that the DLA between Med Tech and WTE2 was signed in September 2017 and existed in 2017, well before 2020. Tr. at 82:9-20 (Rausch); Tr. at 12:5-10, 14:19-16:9, 25:6-26:6, 26:22-27:1 (Lee). Plaintiff concedes that on September 1, 2017, Rausch had authority to sign an agreement on behalf of both Med Tech and WTE2. Plaintiff's Brief at 14 (ECF No. 165). The signature pages were produced, one of which contains the arbitration provision. Plaintiff's Exh. 2. Both Rausch and Lee testified that Conroy Cheng (who was an officer of Med Tech at the time and later became an investor and director) was aware of the DLA between WTE2 and Med Tech by 2017. Tr. at 26:1-6 (Lee); Tr. at 81:7-10, 122:6-14 (Rausch). This testimony was unrebutted.

Plaintiff attempts to discredit Karen Lee asserting that her testimony was "inconsistent and convoluted…." Plaintiff's Br. at 22 (ECF No. 165). Their attack on Ms. Lee is little more than word play with someone who is not a native English speaker and is borderline xenophobic. Ms. Lee said that she witnessed Mr. Rausch's signature on the DLA in 2017 and then explained what

she meant by witnessing a signature. Tr. at 12:5-10, 14:19-16:9, 25:6-26:6, 26:22-27:1 (Lee). There is nothing inconsistent or convulsed about this testimony.

Plaintiff claims Defendants cannot meet their burden where they have not submitted a copy of the agreement or any other corroborating evidence. The cases Plaintiff relies on are readily distinguishable. Plaintiff cites Goldstein v. Depository Trust Co., 717 A.2d 1063 (Pa. Super. Ct. 1998) for the proposition that a "defendant failed to establish an arbitration agreement existed where it failed to submit a copy of the agreement." In Goldstein, there was no agreement; there was no testimony; there was only guess work asserted by a non-party to the alleged agreement. In Goldstein, the defendant Depository Trust Company ("DTC") sought to compel arbitration based on an alleged arbitration agreement between the plaintiff Goldstein and his broker Prudential Bache Securities, Inc. ("PBS"). DTC was not a party to the alleged agreement between Goldstein and PBS but was seeking to assert the arbitration agreement allegedly in that agreement. DTC did not provide the actual agreement between Goldstein and PBS. DTC submitted what it contended was PBS's standard client agreement, but could not say whether or not this was the actual agreement between Goldstein and PBS or even if there was any such agreement between them. The court did not compel the arbitration because there was "no evidence of record that any such agreement exists." 717 A.2d at 1067. Here, we have, among other things, the testimony of Rausch and Lee and the signature pages, which contain the arbitration agreement.[1]

---

[1] Plaintiff also cites to Sims v. Blanchris, Inc., 648 F. Supp. 480 (S.D.N.Y. 1986) which is readily distinguishable. Plaintiff's Br. at 18. This case does not involve an arbitration agreement but a royalty agreement alleged by the plaintiff musician. Plaintiff argues that it stands for the proposition that a party failed to establish the existence of an agreement where the "only evidence" is his conclusory testimony that he entered into a written agreement. This was the court's ruling on the merits after the bench trial. The court's ruling was based on, among other things, *that no copy of any writing was introduced*, there was no satisfactory explanation of the failure to produce the document, plaintiff could not recall the essential terms of the agreement and the alleged signer of the agreement did not testify. Given that that the essential terms were in doubt and thus no

II. **Plaintiff Has Not Met Its Burden Of Establishing By The Clear And Convincing Evidence That The Agreement Was The Product Of Fraud.**

    A. **Plaintiff Must Prove Fraud By Clear And Convincing Evidence.**

Once Defendants have met their initial burden of proving the existence of the agreement, the burden shifted to Plaintiff to prove that the agreement was the product of fraud by clear and convincing evidence. Plaintiff has presented several reasons why it should be excused from proving anything, none of which are persuasive.

Plaintiff initially argues that it "has not pleaded fraud in connection with the Alleged DLA." Plaintiff's Br. at 13. This is not true. Plaintiff has consistently maintained throughout this proceeding that the DLA was the product of fraud. In the Complaint, Plaintiff alleged that the 2017 DLA between WTE2 and Med Tech was "fabricated" by Rausch and is a "sham contract that is null, void and unenforceable…." Complaint ¶¶ 73-74 (ECF No. 1). In the Opening Statement in this hearing, Plaintiff's attorney made clear Plaintiff's position – "this agreement is actually a fake, a fraud…." Tr. at 60:19-20 (emphasis added).

Plaintiff argues that nothing in the Third Circuit's decision in MZM Construction places the burden on it to prove fraud by clear and convincing evidence. To the contrary, MZM Construction explicitly states that the Court is to apply state law. MZM Construction, 974 F.3d at 402. Pennsylvania state law requires that a party asserting fraud has the burden of establishing it by clear and convincing evidence. This is true whether fraud is asserted as an affirmative claim for damages or as a defense. See Weissberger v. Myers, 90 A.3d 730, 735 (Pa. Super. Ct. 2014) (party asserting a civil fraud has burden of proving fraud by clear and convincing evidence); Rohm

---

satisfactory evidence of breach, the court dismissed the contract claim without prejudice in case additional evidence becomes available. The court's decision was based on the facts before it, which are vastly different from the facts here, where there is clearly a writing for the Court to consider.

3

and Haas Co. v. Continental Cas. Co., 781 A.2d 1172 (Pa. 2001) (insurer asserting known loss defense – that is, insurance procured through fraud because insured knew of the loss when it purchased coverage – had to prove it by clear and convincing evidence); accord SodexoMAGIC, LLC v. Drexel University, 24 F.4th 183, 205 (3d Cir. 2022). While Plaintiff meekly sought to distinguish the cases Defendants cited on this point in a footnote (Br. at p. 15 n. 2), Plaintiff made no attempt to distinguish the Pennsylvania Supreme Court's decision in Rohm and Haas.

Plaintiff's other attempts to side-step its burden are similarly unavailing. Plaintiff argues that "fraud in the execution" requires proof of "detrimental reliance" or "justifiable reliance" as elements and that it never believed the alleged DLA was genuine. Plaintiff's Br. at 14, 16 (ECF No. 165). It also cites to caselaw requiring "detrimental reliance" as part of a common law fraud claim for damages. Plaintiff's Br. at 14 (citing Hvizdak v. Linn, 190 A.3d 1213, 1226-27 & n.4 (Pa. Super. Ct. 2018)). Additional elements that may be required for different variations of a specific type of fraud claim for damages or particular defense are irrelevant to the burden. Courts around the country, including Pennsylvania, have required the party asserting fraud-based claims or defenses (including that a contract is a forgery, sham, fake, phony, etc.) to prove this by clear and convincing evidence. See De Lage Landen Services, Inc. v. Urban Partnership, LLC, 903 A.2d 586, 590 (Pa. Super. Ct. 2006) (when the issue of forgery is raised, the party asserting it bears the burden of proving forgery by clear and convincing evidence) (quoting In re Estate of Presutti, 783 A.2d 803, 805 (Pa. Super. Ct. 2001)); see also Roosevelt Park Protestant Reformed Church v. London, 292 N.W.2d 486, 489 (Mich. 1940) (party asserting contract was a sham had the burden of establishing that by clear and convincing evidence); Lumpkins v. CSL Locksmith, LLC, 911 A.2d 418, 426 (D.C. Ct. App. 2006) (party asserting lease was fabricated or altered bears the burden of proving it by clear and convincing evidence). Plaintiff is asserting the DLA is the

4

product of fraud and bears the burden of proving this by clear and convincing evidence. Plaintiff next argues that it is really only attacking whether Defendants have met their burden on the elements to prove the existence of a contract. This ignores the fact that Defendants have produced a writing and supporting testimony from Mr. Rausch and Ms. Lee that the writing existed at a time when Mr. Rausch had the authority to bind both parties. But that is beside the point. The same could be said about the fraud in the execution doctrine. In the typical fraud in the execution claim, the party attacking the agreement argues that they had not reached an agreement on the terms in the writing because the other party inserted different terms in the agreement signed without alerting the other party. It does not matter that one could recharacterize what happened as no contract was actually formed because there was no agreement on the terms. The burden to prove fraud remains on the party asserting it.

In a final gasp of desperation, Plaintiff cites to a Massachusetts state trial court opinion and then proceeds to misrepresent its holding. R&R Edwards Corp. v. Melanson, No. 034426, 2006 WL 3725562 (Mass. Super. Ct., Middlesex County Nov. 21, 2006). Plaintiff claims that the Melanson court viewed a "party's creation and backdating of [an] alleged contract as a failure to satisfy the 'burden of proof to establish' [a] contract existed, rather than a fraud." Br. at 14. In Melanson, the court explicitly did not reach the issue of whether the contract being sued on was a "sham contract", because the court found that the general contractor "had not satisfied its burden of proof to establish such a contract ever existed…." Id. at *2. The contractor claimed that the original contract was destroyed in the ordinary course after the work was completed. The court did not credit the explanation that it was destroyed while $81,000 was still owed on the job. Id. at *1. The trial testimony from the contractor was that when he realized the original was missing, he created a replacement copy and backdated it. Putting aside Plaintiff's shocking lack of candor as

5

to the actual holding of the Melanson decision, the fact remains that a single unpublished decision from a Massachusetts trial court carries no weight in the face of the overwhelming authority cited above that requires Plaintiff to prove fraud by clear and convincing evidence.

      **B.**    **Plaintiff Has Not Proven By Clear And Convincing Evidence That The 2017 Med Tech-WTE2 DLA Was The Product Of Fraud.**

Central to Med Tech's argument is that this Court should infer the date that Rausch signed the DLA between Med Tech and WTE2 from various metadata, highlighting and other indicia found on computer files. Plaintiff's Br. at 17-19 & n.3; e.g., Plaintiff's Proposed Findings of Fact 12, 30-33. Med Tech offered no expert testimony to explain these things. Instead, Med Tech offers counsel's interpretation of the import of these things. As set forth in Defendants' opening brief, this is not competent evidence. See Pearson v. U.S. Bank Nat. Ass'n, No. 13-889, 2014 WL 4163020, at *17 (D. Minn. Aug. 21, 2014) (rejecting plaintiff's attorney's opinion about metadata because it was not competent expert testimony and offered conclusions that were speculative, "especially in light of the common understanding that 'creation dates' in metadata may be altered by copying a document or moving it to a new location (e.g., 'save as' function on a word processor)"). Med Tech does not offer any contrary authority; instead, it offers the conclusion that no expert testimony is required. Plaintiff's Br. at 17 n.3.

None of the remaining "evidence" offered by Plaintiff comes anywhere near proving fraud by clear and convincing evidence. Initially, Plaintiff points to draft DLAs that were attached to emails in early 2020. There is nothing nefarious about those emails. As Mr. Rausch explained, after he left, there were ongoing discussions with Conroy Cheng about how the parties could move forward, which include a new DLA as several years had passed since the original agreement and the company's development efforts had progressed. Tr. at 102-103. Simply, the parties needed to negotiate a new agreement. Plaintiff next points to the notice provision in the DLA, which lists

the Hong Kong park address, which Defendants have already addressed in their Opening Brief at 12.  ECF No. 158.  Plaintiff next points to statements that were made or not made in investment documents (Series A and Series B) and emails, which Defendants addressed in their Opening Brief at 13-14.  ECF No. 158.  Finally, Plaintiff clips snippets from emails and other documents to suggest that there was no existing DLA.  These emails appear to be little more than setting forth topics for discussion and brainstorming to move things forward.  Plaintiff's Exhs. 24, 25.  Nothing is hidden here; Hubert Ho, who was running Med Tech, was copied on them.  Id.  Once again, Plaintiff is straining to prove its case.  Plaintiff also points to a draft term sheet and draft DLA from early 2020, which as already explained above, are not evidence that no DLA existed but evidence the parties were in negotiations about moving forward now that Rausch was no longer at Med Tech.  Quite simply, this weak circumstantial evidence cannot satisfy Med Tech's burden of proving the DLA was the product of fraud by clear and convincing evidence.  Especially when considered along with the unrebutted testimony that Conroy Cheng was aware of the DLA back in 2017.

**III.    Whether Or Not The Missing Witness Inference Applies, The Only Competent, Unrebutted Testimony Is That Conroy Cheng (Med Tech's Major Investor, Director And Officer) Was Aware Of The DLA Between Med Tech And WTE2 By 2017.**

This Court should view the failure of Med Tech to call its officer and director Conroy Cheng in determining whether a DLA existed in 2017 whether viewed under the lens of an absent witness inference or simply that the testimony of Rausch and Lee on this point was unrebutted.

The decision whether to apply an adverse inference for the failure to call a witness rests within the sound discretion of the court.  Med Tech does not dispute that Conroy Cheng lives outside of the United States and that Mr. Cheng is under Med Tech's control.  Instead, Med Tech argues that Mr. Cheng was "equally available" to both sides because he could have been deposed.

The case Plaintiff cites, In re Groggel, 333 B.R. 261, 304-05 (Bankr. W.D. Pa. 2005), turns not on the possibility that someone could be deposed but on the fact that the witnesses had been deposed and their deposition testimony was offered at trial. Under these circumstances, live testimony would be cumulative and no adverse inference is warranted. Id. at 305-06 (citing Pitchford v. PEPI, Inc., 531 F.2d 92, 107 (3d Cir. 1975)). In Hawkey v. Peirsel, 869 A.2d 983, 988-89 (Pa. Super. Ct. 2005), the court simply noted that the decision whether to use an adverse inference is fact intensive and within the discretion of the trial court.

Irrespective of the missing witness inference, the failure of Med Tech to call Conroy Cheng as a witness leaves the testimony of Rausch and Lee unrebutted. They both testified that Conroy Cheng was aware of the DLA between Med Tech in 2017. Tr. at 26:1-6 (Lee); Tr. at 81:7-10, 122:6-14 (Rausch). This is particularly important here as Med Tech is claiming that the DLA is a recent fabrication, and Mr. Cheng is a major investor, director and officer of Med Tech. Med Tech had every opportunity to call Mr. Cheng to counter this. Mr. Cheng could have appeared by remotely (as Ms. Lee did), and the Court even gave the parties an additional day to call additional witnesses. Yet Med Tech decided to do nothing other than submit a seven-page brief accompanied by multiple exhibits that had not been admitted at the evidentiary hearing that this Court has preliminarily determined was so inappropriate that sanctions may be warranted. In hindsight, that submission should be seen for what it truly is – an improper effort to circumvent Plaintiff's inexcusable refusal to call Mr. Cheng as a witness.

The Court's findings of fact and conclusions of law should include the following: "Conroy Cheng, who at the time was an officer of Med Tech and later became an investor and director, was aware of the DLA between Med Tech in 2017." Tr. at 26:1-6 (Lee); Tr. at 81:7-10, 122:6-14 (Rausch).

8

IV.  **The Testimony And Documents Related To An Alleged MSA Are Not Admissible To Establish A Character Of "Untruthfulness" Or To Prove A Common "Plan".**

Med Tech argues that evidence regarding a Master Services Agreement between WTE2 and Med Tech is admissible under Federal Rule of Evidence 608(b) which provides that:

> SPECIFIC INSTANCES OF CONDUCT.  Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of … the witness….

Fed. R. Evid. 608(b).  Med Tech argues that the creation of an MSA in 2020 and Rausch's demand for payment for services WTE2 performed on behalf of Med Tech is an act of untruthfulness.  The so-called MSA evidence is inadmissible for a number of reasons.  First, there is no competent evidence that Rausch ever presented any signed MSA to Med Tech.  The creation of such a document is an issue of disagreement between the parties.   There is no evidence that a signed MSA was ever forwarded to Med Tech and or was included in any pleading filed with this Court.  When questioned about the MSA at his deposition, Rausch acknowledged that there is no signed MSA and that mention of a written agreement was a mistake.  Tr. at 175-178 (Rausch).   This, however, does not change the fact that WTE2 performed services and advanced funds on behalf of Med Tech (and thus WTE2 is entitled to be reimburse for this).  Tr. at 178:10-16 (Rausch); Tr. at 52:7-13 (Lee).  There were no acts of untruthfulness.  Second, even if Plaintiff were permitted to cross-examine Rausch on specific instances of untruthfulness, Plaintiff was not permitted to offer up extrinsic evidence, and thus all of the documents relating to the MSA claims are inadmissible.  Rule 608(b) contemplates, at most, brief cross-examination on the topic and not a trial within a trial.  As one court stated:

> Federal Rule of Evidence 608(b), permits attacks on a witness's credibility through evidence of past untruthfulness, but it prohibits "extrinsic evidence ... to prove a

9

> specific instance[ ] of a witness's conduct in order to attack or support the witness's character for truthfulness...." <u>United States v. Murray</u>, 103 F.3d 310, 322 (3d Cir. 1997). <u>See</u> <u>also</u> <u>United States v. Williams</u>, 464 F.3d 443, 448 (3d Cir. 2006) ("The court may at its discretion permit questioning about specific instances of conduct on cross-examination, but only if the conduct is probative of the witness's character for truthfulness or untruthfulness."). "If the conduct is probative of the witness's character for truthfulness, a party may inquire of that conduct on cross-examination, but may not offer extrinsic evidence of the conduct." <u>Andrade v. Walgreens-Optioncare, Inc.</u>, 784 F.Supp.2d 533, 536 (E.D. Pa. 2011) (emphasis original) (citing <u>Williams</u>, 464 F.3d at 448 ("Under Rule 608(b), specific instances of conduct of a witness, other than conviction for a crime, may not be proved at trial through extrinsic evidence ....")). Thus, "a party may ask a witness on cross-examination about a specific instance of conduct probative of that witness's character for truthfulness, but '[i]f the witness denies the conduct, ... the questioning party must take the witness' answer[.]" Id. (citations omitted).

<u>United States v. Guerrier</u>, 521 F. Supp. 3d 527, 532 (M.D. Pa. 2021). This Court should not consider either the testimony or exhibits related to the MSA on this motion.

In the alternative, Med Tech argues that evidence regarding the creation of an MSA is admissible under Federal Rule of Evidence 404(b) as evidence of "any other crime, wrong, or act" may be admissible to prove a "plan." Plaintiff's Br. at 24-25. Rule 404(b) carries "no presumption of admissibility," and thus the proponent of the evidence bears the burden of demonstrating its applicability. <u>United States v. Caldwell</u>, 760 F.3d 267, 276 (3d Cir. 2014). The proponent must do more than "pluck[] a non-propensity purpose from the list in Rule 404(b)(2)." <u>United States v. Johnson</u>, No. 1:16-cr-162, 2017 WL 5135355, at *3 (M.D. Pa. Nov. 6, 2017). The simple incantation of a proper purpose does not magically transform inadmissible evidence into admissible evidence. <u>Caldwell</u>, 760 F.3d at 276. Other than parroting the rule, Plaintiff offers no explanation of what constitutes a "plan" under Rule 404(b)(2). While the DLA and alleged MSA both involved Med Tech and WTE2, there is no common "plan." They are separate and distinct agreements involving separate and distinct obligations and rights. While Med Tech attempts to cobble together a plan by comparing two interrogatory answers which merely state that Rausch

and Conroy Cheng were involved in negotiating things for both the DLA and MSA, Med Tech ignores the remainder of the answers which detail differences, such as that WTE2 was seeking to recover for work orders listings and costs that had been approved by Conroy Cheng. Plaintiff's Exh. 53, at 6. There is no competent testimony or evidence indicating that the MSA and DLA were part of some overarching plan. Plaintiff's terse argument invoking the phrase "plan" without further support does not make this information admissible.

V. **The Court Should Not Consider The Incomplete Employment Agreement Which Was Not Introduced During The Testimony Of Any Witness.**

In a footnote (Plaintiff's Br. at 28 n.6), Plaintiff argues that the Court should consider an alleged Employment Agreement between Rausch and Med Tech. This was not introduced with any witness, including Rausch. It would be inappropriate to consider this document without testimony and again, the Court should be mindful of the fact that it provided Plaintiff the opportunity to call Mr. Rausch to testify on cross-examination as to this document, yet Plaintiff made the conscious decision not to do so. Had he been questioned about it, Rausch would have explained a number of things, including that the purpose of the agreement was simply to document employees in Pennsylvania and that the employment agreement references an "attached Proprietary Information and Inventions Agreement" (but that Rausch was never presented with any such agreement and did not sign any). No such signed agreement was ever produced. The only draft agreement provided in discovery was created later and allows the person signing it to carve out specific intellectual property. Moreover, when Rausch was removed as CEO in December 2019, the Board requested that Rausch sign a "confirmatory" assignment of his intellectual property rights to MTA2. Deehr Declaration, Exhibit 5 (ECF No. 66). If there was a valid agreement already in place, there would have been no need for the December 2019

"confirmatory" agreement. In the event the Court considers this document, the Court should reopen the record to provide Defendants the opportunity to make these points as part of the record.

VI. **All Of The Claims Are Subject To Arbitration.**

Defendants respectfully submit that all of the claims in this case are subject to arbitration. The agreement provides that "any dispute arising out of or in connection with this contract, including any questions regarding the existence, validity or termination, shall be referred exclusively and finally resolved by arbitration…." This language has been interpreted broadly as requiring arbitration of all possible claims that touch on the rights set forth in the parties' contract. See Parfi Holding AB v. Mirror Image Internet, Inc., 817 A.2d 149, 155 (Del. 2002) (finding agreement to submit to arbitration "any dispute, controversy or claim arising out of or in connection with" the contract signaled an intent to arbitrate all possible claims that touch on the rights set forth in their contract.") (emphasis added).[2]

Plaintiff claims that the intellectual property ownership is not subject to arbitration. This ignores that pleadings and the arbitration agreement. Plaintiff brought a claim for declaratory relief against Rausch and WTE2 to determine the ownership of certain intellectual property. Complaint ¶¶ 64-69 (ECF No. 1). The WTE2-MTA2 DLA involves the licensing of intellectual property. The declaratory judgment claim that would make MTA2 the sole owner of this

---

[2] In its original reply brief, Plaintiff cited Wexler v. AT&T Corp., 211 F. Supp. 2d 500 (E.D.N.Y. 2016), for the proposition that the phrase "arising out of or relating to any aspect of the relationship between us" did not mean "every possible dispute" between the parties. See Plaintiff's Opposition to Defendants' Motion to Compel Arbitration, at pp. 16-17 (ECF No. 39). Wexler has no application here. The language in the arbitration agreement is different that the provision here. Moreover, in Wexler, the plaintiff was asserting a claim against AT&T Corp. based on unsolicited telephone calls; the arbitration was with a separate AT&T entity who provided plaintiff's mobile phone service.

intellectual property would contradict the licensing agreement and certainly touches on the parties' rights under the DLA.

Plaintiff makes the broad argument that all of its tort claims are not subject to arbitration. Plaintiff relies on Oliver v. Nordstrom King of Prussia, No. 10-cv-5340, 2010 WL 5121966 (E.D. Pa. Dec. 14, 2010), an employment case, which is readily distinguishable. In that case, the court found that most of the plaintiff's tort and statutory claims would be subject to the arbitration pursuant to the parties' agreement. The only tort claim not covered was an intentional interference with contractual relations claim that arose out of conduct that occurred sometime after the employee-employer relationship had terminated. The court found that the intentional interference claim did not arise from the employment relationship but occurred outside of that relationship. To the contrary, all of the claims here touch on the rights of the parties as set forth in Defendants' Opening Brief on the Motion to Compel Arbitration at 7-8 (ECF No. 34-1).

Plaintiff has pled tort claims for conversion, fraud and unjust enrichment. Complaint ¶¶ 80-97. These claims are based on a number of allegations, including allegedly improper payments to WTE2 of monies owed to MTA2 by Redpharm (Complaint ¶¶ 49-52); allegedly improper loans from MTA2 to WTE2 (Complaint ¶¶ 53-56); and improper invoicing of MTA2 for WTE2's expenses. (Complaint ¶¶ 57-63). With the exception of the Redpharm payments, the other alleged misconduct occurred during the Development and License Agreement between MTA2 and WTE2 and touch on monies owed to each party, including monies that may be due under the DLA. While the Redpharm payments pre-date the WTE2-MTA2 DLA, these allegations, if proven, may entitle MTA2 to some offset of amounts due under the DLA, thereby touching on the rights of the parties under the WTE2-MTA2 DLA.

Plaintiff argues that Defendants did not request that this Court compel arbitration of Defendants' counterclaim. That is partially true. Defendants requested that the Court stay the counterclaim but permit Defendants the opportunity to raise those claims in the arbitration. Opening Brief on the Motion to Compel Arbitration at 10 (ECF No. 34-1).

Should the Court determine that some claims fall outside of the parties' arbitration agreement, then the proper course would be to stay those claims while the arbitration proceeds on the other claims. Hinnant v. Am. Ingenuity, LLC, 554 F. Supp. 2d 576, 587-88 (E.D. Pa. 2008).

        **FERRARA LAW GROUP, P.C.**

        BY: /s Aaron L. Peskin
            AARON L. PESKIN, ESQUIRE
            Attorney for Defendants

Dated: June 17, 2022

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 17th day of June 2022, a true and correct copy of the foregoing Reply Memorandum were served on counsel of record via the Court's ECF filing system.

/s Aaron L. Peskin<br>
AARON L. PESKIN, ESQUIRE<br>
Attorney for Defendants

Dated:  June 17, 2022