**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| MEDICAL TECHNOLOGY ASSOCIATES II INC. | CIVIL ACTION |
|---|---|
| v. | NO. 21-1095 |
| CARL W. RAUSCH & WORLD TECHNOLOGY EAST II LIMITED | |

<u>**MEMORANDUM RE: SANCTIONS**</u>

Baylson, J.                                                                                    August 4, 2022

By Order entered on May 25, 2022, Plaintiff and its counsel were directed to show cause why sanctions should not be imposed, for their having filed an unsolicited 61-page "Submission" containing evidentiary materials, after advising the Court they did not intend to submit any additional testimony on a pending motion to compel arbitration.  Upon review of the parties' responses to the show-cause order, the Court concludes that sanctions are appropriate as to one of plaintiff's counsel.

I.       **Relevant Facts and Procedural History**

Plaintiff Medical Technology Associates II Inc. ("Med. Tech." or "MTA2" or "MedTech") brought the instant action on March 5, 2021, alleging various claims against Carl Rausch and World Technology East II Limited ("WTE2") and seeking:

> (1) declaratory judgment against Mr. Rausch and WTE2 concerning Med. Tech.'s ownership of certain patent applications and intellectual property;

> (2) declaratory judgment against WTE2 that the Development and License Agreement dated September 2, 2017 between WTE2 and Med. Tech. ("DLA") (containing the disputed arbitration clause) is a "sham contract that is null, void, and unenforceable";

     (3) declaratory judgment against WTE2 that Med. Tech. owes no payments to WTE2 pursuant to the DLA, or any other contractual or non-contractual relationship;

     (4) conversation against Mr. Rausch and WTE2 for "converting and misappropriating [Med. Tech.'s] funds";

     (5) fraud against Mr. Rausch and WTE2 as to the relationship between Med. Tech. and WTE2, and Med. Tech. and Redpharm; and

     (6) unjust enrichment against Mr. Rausch and WTE2.

See Compl. (ECF 1) ¶¶ 64-97.  On August 27, 2021, Defendant filed an amended answer and three counterclaims, asserting breach of contract, unjust enrichment, and seeking declaratory relief that the DLA between Med. Tech and WTE2 "does in fact exist and is valid."  See First Amended Answer, Counterclaim, and Third-Party Complaint (ECF 37).

After a Rule 16 Conference and other preliminary discovery, Defendant filed a Motion to Compel Arbitration, based on an arbitration provision in the DLA mandating that "any dispute arising out of or in connection with this contract, including any questions regarding existence, validity or termination, shall be referred exclusively and finally resolved by arbitration."  Mot. to Compel Arbitration (ECF 34) 1.  Substantial discovery ensued, and, on January 20, 2022, the Court ordered the parties to set forth, in chronological order, their facts and contentions relating to the issues in the case.  See Order (ECF 105).  Plaintiff responded to this Order (see ECF 107), as did Defendants (see ECF 106).  The Court determined that an evidentiary hearing would be necessary on the narrow issue of arbitrability, which took place on May 12-13, 2022.  See Order, dated March 23, 2022 (ECF 121) (citing MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds, 974 F.3d. 386 (3rd Cir. 2020)) and Order, dated April 7, 2022 (ECF 128).

At the evidentiary hearing, Defendants presented testimony, but Plaintiff did not. Defendants' witnesses—Karen Lee and Carl Rausch—supported Defendants' position that the

DLA was authentic and valid in all respects.  Plaintiff attempted to show, by cross-examination and argument, that the DLA was not authentic and that the parties had never agreed to an arbitration clause.  Plaintiff did not call any witnesses.

Immediately following the conclusion of the evidentiary hearing, on May 13, the Court held oral argument and issued a scheduling order with dates for both parties to file briefs on specific issues.  See Hearing Tr. (ECF 149).  On May 16, 2022, the Court, sua sponte, held a recorded telephone conference with the parties' counsel and, at that time, provided counsel comments on several pending issues.  See Notice (ECF 144).  During this telephone conference, the Court encouraged counsel to enter into some type of mediation to attempt to resolve the issues. At the end of this telephone conference, the Court stated it would allow each party the opportunity to present additional factual testimony and entered an Order requiring the parties to advise the Court, by May 19, 2022, whether either party desired to present any other testimony.  See Order, dated May 16, 2022 (ECF 147), which stated:

> In the event that either party wishes to present additional fact testimony for the reasons stated on the recorded telephone conference this date, a list of witnesses and a short summary of factual testimony shall be filed by 4:00 p.m. on Thursday, May 19, 2022 . . .

On May 19, both parties, by counsel, advised Chambers that they did not desire to present additional fact testimony.  Defendants' filing consisted of a one-page letter indicating that it did not intend to present any additional factual testimony.  See ECF 154.

## II.    Plaintiff's "Submission"

Plaintiff's filing amounted to a 61-page "Submission" that included 7 pages of legal argument, citing testimony and documents, and ten (10) exhibits.  See ECF 153.  This "Submission" is entitled "Submission in Response to the Court's May 17, 2022 Order" and states

in the first paragraph that it is being filed "to explain the reasoning behind [Plaintiff's] decision" to not present additional fact testimony.  The "Submission" contains the following ten (10) exhibits.  Plaintiff did not use any of these documents in the cross-examination of Defendant's witnesses and, as noted above, Plaintiff did not call any witnesses, or move to introduce any of these exhibits into evidence during the evidentiary hearing on May 12-13, 2022.

- **(1) Pl's Ex. 69 (ECF 153-1)**:  This document is a letter, dated May 4, 2020, from Philip C. Putnam of Monteleone & McCrory, LLP, counsel for Med. Tech. at the time, and Elizabeth Parsons of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., counsel for WTE2 (and possibly Mr. Rausch) at the time.  It is entitled "Re: World Technology East II."  The letter responds to certain "claims" WTE2 was raising against Med. Tech., pursuant to a letter dated May 1, 2020 from Ms. Parsons to Conroy Cheng at Med. Tech.  As relevant here, the third paragraph discusses the existence, or lack thereof, of a Master Service Agreement ("MSA") between Med. Tech. and WTE2 and a MSA between Med. Tech. and Redpharm.  Mr. Putnam writes:

  > Second, I have not yet seen the "Master Service Agreement" you refer to between [Med. Tech.] and WTE2, and am unable to locate a copy; we would appreciate your provide us with a copy of this agreement.
  > . . . .
  > You also refer to a certain Master Service Agreement between [Med. Tech.] and Redpharm (with a date identical to the Master Service Agreement between [Med. Tech.] and WTE2).  We assume that these are two separate Agreements, and would appreciate your providing us with a copy of this second Agreement as well.

- **(2) Pl's Ex. 70 (ECF 153-2)**:  This document is a letter dated May 26, 2020 from Mr. Putnam to Ms. Parsons, entitled "Re: Carl Rausch's claims."  In this letter, Mr.

Putnam references a letter dated May 15, 2020 from Mr. Rausch to Conroy Cheng, in which Mr. Rausch writes:

> I was very surprised and disappointed to receive the communication from your ([Med. Tech's]) attorney expressing complete ignorance of our four-year history and the agreements between [Med. Tech.] and WTE.  I will not waste money to have the Mintz Levin attorneys provide your attorney with documents in [Med. Tech.'s] possession.  These are matters that I have been discussing with you and [Med. Tech.] Board in detail since July of 2019.
>
> . . . .
>
> Please note that WTE2 will be also terminating the Development and License Agreement between WTE2 and [Med. Tech.].

- **(3) Pl's Ex. 71 (ECF 153-3)**:  This document is a letter dated November 24, 2020 from S. Elaine McChesney of Morgan, Lewis & Blockius, LLP, seemingly writing on behalf of WTE2 and Mr. Rausch,[1] to the Board of Directors of Med. Tech. (Conroy Cheng, Hubert Ho, Hu Shi, and Hao Yuan Chen).  The letter is entitled "Re: Termination of WTE2 and [Med. Tech.] Agreement.  In this letter, Ms. McChesney discusses WTE2's termination of the September 2, 2017 Development and License Agreement between WTE2 and Med. Tech.

- **(4) Pl's Ex. 72 (ECF 153-4)**:  This document is an email dated November 30, 2020 from Mr. Putnam to Ms. McChesney, entitled "Termination of WTE2/MTA2 Agreement."  Attached to the email is a letter, dated November 30, 2020, from Mr. Putnam to Ms. McChesney, in which Mr. Putnam writes:

---

[1]      It is unclear from the letter for whom Ms. McChesney is counsel.  However, at the evidentiary hearing, Karen Lee testified that Ms. McChesney is a lawyer that Mr. Rausch "contracted to perform some legal work for him."  Hearing Tr. (ECF 148) 11: 18-19; see also id. at 85:18-23 (Mr. Rausch testifying that Ms. McChesney is a corporate lawyer).

> In your letter you refer to a Development and License Agreement dated September 2, 2017.  After checking our files, I am unable to locate a copy of that Agreement (as is my client).
>
> . . . .
>
> Prior to our responding to your letter, I would appreciate receiving a complete copy of that Agreement (including any addenda or amendments).

- **(5) Pl's Ex. 73 (ECF 153-5)**:  This document is a letter, dated January 4, 2021, from Mr. Graves to Ms. McChesney, entitled "Re: WTE2 and MTA2."  In this letter, Mr. Graves acknowledges that Ms. McChesney had sent a copy of the requested September 2, 2017 Development and License Agreement between WTE2 and Med. Tech. and proposes a number of questions concerning the document.  Mr. Graves also writes that Med. Tech. "has been unable to locate in its files" a MSA between WTE2 and Med. Tech., requesting that Ms. McChesney provide a copy.

- **(6) Pl's Ex. 74 (ECF 153-6)**:  This document is a letter, dated January 15, 2021, from Ms. McChesney to Ms. Graves, entitled "Re. Termination of WTE2 and MTA2 Agreements."  In this letter, Ms. McChesney refers to Med. Tech.'s obligations under the Development and License Agreement dated September 2, 2017 between it and WTE2.  Ms. McChesney also references Mr. Grave's prior letter suggesting that the Development and License Agreement between WTE2 and Med. Tech. is "alleged."  She writes:

> [W]e reject your posturing that the Development and License Agreement dated September 2, 2017 between WTE2 and [Med. Tech.] . . . is somehow an "alleged" agreement.  [Med. Tech.] licensed rights to Redpharm, which it first obtained from WTE2 via the DLA.  [Med. Tech.] never owned those rights but merely licensed them from WTE2.  If there was never such an agreement between WTE2 and [Med. Tech.], then [Med. Tech.] has no product rights and no intellectual property at all.

> . . . .
>
> Further, the provisions of the DLA between [Med. Tech.] and
> WTE2 mirror the Development and License Agreement between
> [Med. Tech.] and Redpharm dated September 6, 2017, precisely
> because [Med. Tech's] rights had been originally licensed from
> WTE2. . . .  The DLA was executed on September 2, 2017, at a time
> when Mr. Rausch was the sole director of [Med. Tech.], and New
> World Technology II was the sole shareholder of [Med. Tech.].

- **(7) Pl's Ex. 75 (ECF 153-7)**:  This document is a letter, dated February 5, 2021, from Mr. Graves to Ms. McChesney, entitled "Re. WTE2 and MTA2."  Mr. Graves addresses WTE2's prior argument concerning the termination of the "alleged" Development and License Agreement dated September 2, 2017 between WTE2 and Med. Tech.

- **(8) Pl's Ex. 76 (ECF 153-8)**:  This document is a letter, dated February 19, 2021, from Withers LLP, counsel for WTE2, to Med. Tech. (c/o Mr. Graves), Redpharm (c/o Yuanchun Zhou, of Beijing Jilai Law Firm), and the Executive Chairman of Redpharm.  The letter includes a discussion of obligation(s) pursuant to the Development and License Agreements dated September 2, 2017 between WTE2 and Med. Tech., and the same between WTE2 and Redpharm.

- **(9) Pl's Ex. 77 (ECF 153-9)**:  This document is an email from Mr. Graves to Eleni Polycarpou, of Withers LLP, cc'ing Philip M. Bownman of Cooley, Virginia Kniska of Cooley, Marcia Notarangelo of Morgan Lewis, Ms. McChesney, and Elizabeth Trafton of Cooley.  It has the subject line, "RE: Termination of WTE2 and MTA2 Agreement."  This email refers to the Withers Letter dated February 19, 2021 as attached (however, no such letter is attached to the version that Mr. Graves

proposes as Pl's Ex. 77) and discusses open "factual disputes, arguments, and questions," to include the "various disputes between [Med. Tech.] and WTE2."

- **(10)** <u>**Pl's Ex. 78**</u> **(ECF 153-10)**:  This document is a letter, dated March 2, 2021, from Ms. McChesney to Mr. Graves.  In this letter, Ms. McChesney writes that they "will proceed with arbitration as required by the contract."

Following filing of the "Submission," Defendants' counsel filed a letter, dated May 20, 2022, arguing that the "Submission" "poisoned the well" and appropriate sanctions should be imposed.  <u>See</u> Letter (ECF 155).  Defendants argued that the "Submission" was "an attempt to circumvent the post-hearing briefing schedule and to evade the page limits set by this Court" in "blatant disregard" of this Court and this Court's Orders."  <u>Id.</u>  Defendant noted that the ten (10) attached exhibits "were never presented to the Court at the hearing or even identified in their prehearing exhibit list."  <u>Id.</u>

On May 25, 2022, the Court ordered Plaintiff and its counsel, specifically John Graves, Esq. of Cooley LLP—the signatory of the "Submission" and who is admitted to this Court <u>pro hac vice</u> (<u>see</u> ECF 11)—to show cause why sanctions should not be imposed for the "Submission."

### III.    Plaintiff's Justification for the "Submission"

On June 13, 2022, Plaintiff and its counsel filed their responses to the Order to Show Cause. <u>See</u> Graves Resp. (ECF 167); Med. Tech. Resp. (ECF 168).  As to his reasons for filing the "Submission," Mr. Graves stated that he did so, without relying on any express court authorization or court rule . . . other than the Court's directive" during the May 16's recorded telephone conference, to "inform the Court that [Med. Tech.] did not intend to call additional witnesses, to explain why it had made that choice, and, relatedly, to respond to statements made by the Court

during the Status Conference."   Graves Resp. 9-11.   Mr. Graves specifically offered four

explanations:

> 1. To explain that MedTech was choosing not to call additional
>    witnesses because it believed that specifically cited testimony and
>    admitted exhibits address the factual questions raised by the Court
>    (ECF 153 at 4-6);
>
> 2. To further explain that two of the factual questions raised by the
>    Court—namely, when did Defendants first present the Alleged DLA
>    to MedTech, and what MedTech did about it—were in fact
>    addressed by certain pre-suit communications between the parties
>    that MedTech had previously filed in this case (id. at 6-7);
>
> 3. To request that the Court admit the correspondence referred to above
>    into the record of the hearing.   While I believed there was no
>    question as to the authenticity of these documents, I offered, if the
>    Court wished, to call as an additional fact witness MedTech's Chief
>    Operating Officer, Hubert Ho, to authenticate these proposed
>    additional exhibits (id. at 7); and
>
> 4. To explain that part of MedTech's decision not to call additional
>    witnesses (with the possible exception of Mr. Ho) was based on
>    MedTech's belief, contrary to the Court's stated position, that
>    MedTech need not prove fraud, and that instead Defendants have
>    effort to fulfill my professional obligations to represent my client
>    zealously and to be candid with the Court.

Id. at 10-11.   Mr. Graves apologized for the "Submission" and asserted that he did not file in "in

bad faith, for any improper purpose, or to gain an unfair advantage over Defendants."   Id. at 11.

Mr. Graves further stated that he believed:

> "[i]t would be inappropriate and potentially prejudicial to [his]
> client's interests to (a) leave MedTech's decision not to call
> additional witnesses without explanation until the filing of that brief,
> and (b) to wait until the brief's filing to request that the Court admit
> the identified pre-suit correspondence between the parties, or in the
> alternative that the Court allow Mr. Ho to offer testimony regarding
> the authenticity of those documents.

Id.  Additionally, Mr. Graves reasoned that he was "particularly concerned that failure to timely request admission of those documents could be deemed a waiver by MedTech of its opportunity to do so." Id.

Mr. Graves stated that Med. Tech. had previously filed nine of the ten exhibits attached to the "Submission." Id. at 12.  According to Mr. Graves, nine of the ten exhibits (Exs. 69-71 & 73-78) were attached to its Opposition to Defendants' Motion to Set Aside Entry of Default (ECF 16, Exs. B-D, F-G, I-L), and five of the ten exhibits (Exs. 69-71, 73, 74) were attached to its Motion for Partial Summary Judgment (ECF 124, Exs. O, Q-T).  As to Pl.'s Ex. 72, Mr. Graves stated that "[t]he email portion of this document was included in what was admitted at the evidentiary hearing as Plaintiff's Exhibit 2, but the attached letter is missing from that exhibit." Id. at 12.  In further justification for his submission of the ten (10) exhibits, Mr. Graves pointed to the Court's statement during the evidentiary hearing, in response to Defendants' counsel's offer to introduce pre-suit correspondence in the post-hearing briefing, that it was "aware of what's on the docket." Id.  Mr. Graves also pointed to its "willingness to remedy any authenticity concerns" by presenting for testimony its Chief Operating Officer, Hubert Ho, to authenticate the documents. Id. (citing "Submission" 7).

In Med. Tech.'s response to the Order to Show Cause, Med. Tech. argued that sanctions, to include revoking Mr. Graves' pro hac vice admission, would be inappropriate because the "Submission" was not filed in bad faith or for an improper purpose, it has not prolonged the litigation, it did not violate an unambiguous order of the Court, and Defendants have not been prejudiced by the "Submission." Med. Tech. Resp. 7-10.  Furthermore, it argued that sanctions are inappropriate because (1) the Order to Show Cause "did not identify the source of authority or

the standard under which it is considering sanctions," and (2) Local Rule 83.6 applies.  Id. at 11-12.

Med. Tech.'s response also included a Motion for Leave to Submit the Report of Gregory P. Joseph, Esq., as a sanctions expert.  See ECF 169.  In his report, Mr. Joseph opines that Mr. Graves was in a "difficult" position, given the Court "precluded any argument on the May 16 Teleconference" and "announc[ed] that on the one hand it was 'going to summarize some of my tentative opinions about the case without reaching any conclusion,' and on the other hand that 'plaintiff has clearly pleaded fraud.'"  Mot. for Leave, Ex. A ("Joseph Report") ¶ 8 (citing May 16, 2022 Tr. 3:8-10 and 4:2).  Mr. Joseph suggests that "[d]eferring any response until MedTech's post-hearing brief risked that the defendant would argue—and the Court might agree—that MedTech had waived any opportunity to submit the additional documentary evidence it believed both answered the Court's questions and rendered additional testimony unnecessary," and risked Mr. Graves' "duties as a zealous advocate."  Id. at ¶ 9.

On June 27, 2022, the Court ordered that Defendants file a brief stating its version of the facts as stated in Mr. Graves' and Med. Tech's responses to the Order to Show Cause.  See ECF 173.  Defendants filed their response on July 11, 2022, see ECF 174, and Plaintiff filed a reply on July 14, 2022, see ECF 177.

The Court notes, as the record reflects, that the Court never asked Plaintiff's counsel "why" Plaintiff did not want to present testimony.

## IV.    Sanctions Under Rule 16(f)

Rule 16 of the Federal Rules of Civil Procedure provides "the principal source of the powers and tools that district courts are to use to achieve the fundamental purpose articulated in Rule 1 of the Federal Rules of Civil Procedure: securing 'the just, speedy, and inexpensive

determination of every action and proceeding.'"  James W. Moore et al., Moore's Federal Practice § 16.03 (3d ed. 2022).   Subsections (a)-(e) "set forth standards for pretrial conferences, case management, and scheduling orders."  Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212 (3d Cir. 2007).

A district court may impose sanctions should a party or its counsel violate these standards, pursuant to subsection (f).  See Fed. R. Civ. P. 16(f) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order.").   "Monetary sanctions for noncompliance with Rule 16 pretrial orders are required and appropriate absent a showing that the violation was 'substantially justified' or the award of expenses is 'unjust' under the circumstances of the case."  Tracinda, 502 F.3d at 241 (citing Moore's Federal Practice, supra § 16.91(2)(b)); see Fed. R. Civ. P. 16(f)(2) ("Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.").   "Substantial justification exists where there is a 'genuine dispute concerning compliance.'"  Rorrer v. Cleveland Steel Container, 564 F. App'x 642, 644 (3d Cir. 2014) (NPO) (citing Tracinda, 502 F.3d at 241).   "Whether a sanction is 'unjust' requires a 'consideration of the degree of the sanction in light of the severity of the transgression . . . .'"  Id. (citing Tracinda, 502 F.3d at 241 (defining "unjust to include "unfair," "unreasonable," "inequitable," or "harsh")).

The Court concludes that it should impose sanctions on one of Plaintiff's counsel, Mr. Graves, who, after advising the Court that Plaintiff would not present any fact testimony, nonetheless simultaneously filed a brief and exhibits attempting to put testimonial evidence into

the record, on the issue of arbitrability, without subjecting any of the individuals who statements were contained in the exhibits to cross-examination.  The Court clearly gave Plaintiff's counsel the opportunity to present testimony, but that invitation was refused.  Instead, Plaintiff's counsel used this improper method to get ten (10) exhibits admitted into evidence only after advising the Court that Plaintiff would not present testimony.

The exhibits attached to the "Submission" clearly discuss the DLA and contain statements which obviously may have some relevance to determining the authenticity of the DLA and its containing of an arbitration clause.  None of these exhibits were introduced or admitted into evidence during the evidentiary hearing on the arbitrability issue.

There is one important evidentiary distinction between calling witnesses for testimony and using documents which contain facts stated by these individuals.  The latter ignores the concept of cross-examination of the individual who is stating facts within the exhibit.  Mr. Graves' strategy was to get facts stated in exhibits into the record without calling those applicable individuals as witnesses.

Mr. Graves, as signatory to the "Submission," has taken full responsibility for the "Submission."  Mr. Graves could have filed a motion for leave to file additional evidentiary documents, accompanying the "Submission" or following Defendants' letter noting and objecting to the prejudicial effects of the "Submission."  Further, following the Court's Order to Show Cause, Mr. Graves could have moved nunc pro tunc for the Court to allow Med. Tech. to present fact testimony.

Importantly, neither Mr. Graves' response nor Med. Tech.'s response, nor the expert opinion submitted on this issue, recognize that Mr. Graves was attempting to place facts before the Court that were clearly relevant to the arbitrability issue, without following procedure by laying

a proper foundation and calling an appropriate fact witness who would be subject to cross examination.   No justification is offered for Mr. Graves' disregard for the procedural responsibilities Plaintiff owes to Defendants, and the Court.  <u>Cf.</u> <u>Philpot v. Philco-Ford Corp.</u>, 63 F.R.D. 672 (E.D. Pa. 1974) (Higginbotham, J.).  The Court is not aware of any precedent or rule that permits a party's counsel to bypass federal procedural requirements in the name of "zealous advocacy."   And the mere fact that some of the exhibits had been attached to prior filings, on different issues, does not allow either party or the Court to then consider these ten (10) exhibits as evidence regarding arbitrability under the DLA.

These events show Mr. Graves' hubris and disregard of procedural rules, particularly in light of the Court's Order offering Plaintiff an opportunity to present fact testimony.  Therefore, for all these reasons, the Court finds that sanctions are appropriate under Rule 16(f).

In addition to the sanction of striking the "Submission"—which the Court has already done through its Order to Show Cause— the Court imposes the following sanctions:

(1)     The Court orders Mr. Graves to attend six (6) hours of continuing legal education ("CLE") courses on the subject of federal practice and procedure, to be completed within six (6) months of this decision.  <u>See, e.g.</u>, <u>Petrisch v. JP Morgan Chase</u>, 789 F. Supp. 2d 437, 456 (S.D.N.Y. 2011) (imposing sanction of four hours of continuing legal education courses pursuant to Rule 16(f)); <u>Roy v. Am. Prof'l Mktg., Inc.</u> 117 F.R.D. 687, 693 (W.D. Okla. 1987) (ordering mandatory attendance at seminar on practicing law within the district, pursuant to Rule 16(f)); <u>cf.</u> <u>Bathazar v. Atl. City Med. Ctr.</u>, 137 F. App'x 482, 490-91 (3d Cir. 2005) (NPO) (affirming district court's sanction of attending two continuing legal education courses, pursuant to Rule 11); <u>Edmonds v. Seavey</u>, No. 08-5646, 2009 WL

4404815, at *5 (S.D.N.Y. Dec. 2, 2009) (imposing sanction of eight hours of continuing

legal education under Rule 11), aff'd, 379 F. App'x 62, 65 (2d Cir.2010).

The courses must be approved by a state CLE board, conducted in a live classroom

format, and "shall not count towards and shall be in excess of" any CLE hours required of

Mr. Graves by the bar(s) of any state to which he belongs.  See Petrisch, 789 F. Supp. 2d

at 456.  Additionally, upon completion of the required hours, Mr. Graves shall file an

affidavit to the Court representing his satisfaction of the Court's sanction.  The affidavit

must attach certificates of attendance for each course, to include the name of the course,

sponsoring organization(s), date of attendance, and length; and

(2)     Pursuant to Rule 16(f)(2), Mr. Graves shall personally pay the reasonable expenses,

to include attorney's fees, that Defendants incurred due to the "Submission."  As discussed

above, the Court does not find Mr. Grave's noncompliance was "substantially justified,"

and "no other circumstances make an award of expenses unjust."  See Tracinda, 502 F.3d

at 241; Rorrer, 564 F. App'x at 644.  Defendants' counsel shall file a statement of fees

charged to their clients in response to the filing of the "Submission," within 14 days of this

decision.

Furthermore, Mr. Graves is reminded that appearing pro hac vice is a privilege.  See Leis

v. Flynt, 439 U.S. 438, 441 (1979).  And that privilege may be revoked.  See Johnson v. Trueblood,

629 F.2d 302, 304 (3d Cir.1980); Eagan v. Jackson, 855 F. Supp. 765 (E.D. Pa. 1994) (Robreno,

J.); Raub v. US Airways, Inc., No. 16-1975, 2017 WL 5172603, at *2 (E.D. Pa. Nov. 8, 2017)

(DuBois, J.).  The Court concludes that Mr. Graves' conduct has not risen to a level to warrant

revocation of his pro hac vice admission.  See LABMD, Inc. v. Tiversa Holding Corp., No. 15-92,

2020 WL 1428935, at *10-11 (W.D. Pa. March 24, 2020).

**V.    Conclusion**

For the foregoing reasons, the Court imposes both monetary and non-monetary sanctions on Mr. Graves.[2]  An appropriate order follows.

O:\CIVIL 21\21-1095 Medical Tech Asso v. Rausch\21cv1095 Memorandum re. Sanctions .docx

---

[2]     Plaintiff filed for bankruptcy on June 14, 2022.  <u>See</u> ECF 170.  An automatic stay of proceedings has followed but does not prevent this Court from imposing sanctions for prior conduct of counsel.